CHARLES L. THOMPSON, IV, CA Bar No. 139927
charles.thompson@ogletree.com
JARED L. PALMER, CA Bar No. 287974
jared.palmer@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: 415-442-4810
Facsimile: 415-442-4870

ALEXANDER M. CHEMERS, CA Bar No. 263726
alexander.chemers@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendants
SELECT EMPLOYMENT SERVICES, INC., CONCENTRA HEALTH SERVICES, INC., and SELECT MEDICAL CORPORATION

**UNITED STATES DISTRICT COURT**

**IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA**

YVONNE LEDESMA, on behalf of herself and others similarly situated,

Plaintiff,

vs.

SELECT EMPLOYMENT SERVICES, INC., a corporation; CONCENTRA HEALTH SERVICES, INC., a corporation; SELECT MEDICAL CORPORATION, a corporation,

Defendants.

Case No. 5:22-cv-899

**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

[28 U.S.C. §§ 1332, 1441, 1446, & 1453 (Class Action Fairness Act)]

[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties; Notice of Pendency of Other Actions; and Declarations of Danielle Kendall and Alexander M. Chemers in Support of Notice of Removal]

Complaint Filed: January 27, 2022

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that defendants Select Employment Services, Inc., Concentra Health Services, Inc., and Select Medical Corporation (collectively, "Defendants") remove this action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"). In support of such removal, Defendants state as follows:

## I. <u>THE STATE COURT ACTION</u>

1. On January 27, 2022, Plaintiff filed her Complaint in the Superior Court of the State of California for the County of Los Angeles ("Action"), Case No. 22STCV03360. (Declaration of Alexander M. Chemers ("Chemers Decl."), ¶ 2.) The Action asserts claims for: (1) failure to pay overtime wages; (2) failure to pay double time wages; (3) failure to include all remuneration when calculating overtime rate of pay; (4) failure to provide meal periods and pay meal period premium wages; (5) failure to authorize and permit rest breaks and pay rest break premiums; (6) failure to provide accurate wage statements; (7) failure to timely pay final wages; and (8) unfair competition. The Action is largely identical to another action filed by the same Plaintiff's attorney, which is currently pending in the Northern District of California, entitled *Christina Villanueva v. Select Employment Services, Inc.*, Case No. 3:17-cv-06875-JCS.

2. On April 29, 2022, Plaintiff served Defendants' agent for service of process with a copy of the Complaint. A true and correct copy of the Complaint ("Compl.") is attached as Exhibit A to this Notice of Removal. (*See also* Chemers Decl., ¶ 2.)

3. On May 27, 2022, Defendants filed an Answer to the Complaint. A true and correct copy of the Answer is attached as Exhibit B to this Notice of Removal. (*See also* Chemers Decl., ¶ 3.)

## II. REMOVAL IS TIMELY

4. This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within thirty (30) days of the service upon Defendants. 28 U.S.C. § 1446(b); *Murphy Bros., Inc v. Michetti Pipe Stringing, Inc*., 526 U.S. 344 (1999) (30-day deadline to remove commences upon service of the summons and complaint).

## III. REMOVAL IS PROPER UNDER CAFA

5. The Action is removable under CAFA given the allegations and claims. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of all proposed plaintiff classes in the aggregate is over 100; and where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

### A. CAFA's Minimal Diversity of Citizenship Requirement Is Satisfied

6. CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a), (b); *Rodgers v. Central Locating Service, Ltd*., 412 F. Supp. 2d 1171, 1174-79 (W.D. Wa. 2006).

7. Defendants are informed and believe that at all relevant times, Plaintiff was, at the time of the filing of the Action, and still is, a resident of the State of California. (Compl. ¶ 3.) Members of the putative class, who are or were employed in California, are presumed to be primarily citizens of the State of California. Indeed, Plaintiff specifically alleges that members of the proposed class "worked, work, or will work for Defendants as non-exempt hourly employees in California."

(*Id.*)

8. For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Further, the members of Plaintiff's proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. *See, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiff was somehow a citizen of the same states as Defendants (and there is no evidence that she is), there is no possible way that the thousands of putative class members, all of whom "work" or "worked" in California, were also citizens of the same states as Defendants.

9. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The Supreme Court established the proper test for determining the principal place of business of a corporation for purposes of diversity jurisdiction. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Court held that "'principal place of business' [as contained in section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 1184, 1192. The Court further clarified that the principal place of business was the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id*. A company's "'principal place of business' refers to the corporation's "nerve center." *Id*. at 1192. The "nerve center" is normally where the corporation maintains its headquarters. *Id.; see also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026 (9th Cir. 2009) (stating that an unincorporated association is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business," with the state of the principal place of business being where a substantial predominance of corporate operations occur or

where the majority of the partnership's executive and administrative functions are performed).

10. At all relevant times, Defendant Select Employment Services, Inc. has been a citizen of Pennsylvania and Delaware but not California.

11. At all relevant times, Defendant Select Employment Services, Inc. has been a subsidiary of parent company Select Medical Corporation incorporated under the laws of Delaware with its principal place of business in Pennsylvania. (Declaration of Danielle Kendall ("Kendall Decl."), ¶ 3.) At all relevant times, Defendant Select Employment Service, Inc. has not been organized or incorporated under the laws of California or had its principal place of business there. (*Id.*) Select Employment Services, Inc.'s principal place of business is in Mechanicsburg, Pennsylvania, where it conducts the majority of its business, and its corporate headquarters are located and where its high-level corporate officers, who are responsible for the direction, control, and coordination of its activities, are located. (*Id.*) Therefore, at all relevant times, Defendant Select Employment Service, Inc. has been a citizen of Pennsylvania and Delaware but not California.

12. At all relevant times, Defendant Concentra Health Services, Inc. ("Concentra") has been a subsidiary of Select Medical Corporation incorporated under the laws of Nevada with its principal place of business in Texas. (Kendall Decl., ¶ 4.) At all relevant times, Concentra has not been organized or incorporated under the laws of California or had its principal place of business there. (*Id.*) Concentra does business in a number of states and does not conduct the substantial predominance of its business in any single state. (*Id.*) As such, Concentra's principal place of business is in Dallas, Texas, where its corporate headquarters are located and where its high-level corporate officers, who are responsible for the direction, control, and coordination of its activities, are located. (*Id.*) Therefore, at all relevant times, Concentra has been a citizen of Texas and Nevada but not California.

13. At all relevant times, Defendant Select Medical Corporation has been incorporated under the laws of Delaware with its principal place of business in Pennsylvania. (Kendall Decl., ¶ 5.) At all relevant times, Defendant Select Medical Corporation has not been organized or incorporated under the laws of California or had its principal place of business there. (*Id.*) Select Medical Corporation does business in a number of states and does not conduct the substantial predominance of its business in any single state. (*Id.*) As such, Select Medical Corporation's principal place of business is in Mechanicsburg, Pennsylvania, where its corporate headquarters are located and where its high-level corporate officers, who are responsible for the direction, control, and coordination of its activities, are located. (*Id.*) Therefore, at all relevant times, Defendant Select Medical Corporation has been a citizen of Pennsylvania and Delaware but not California.

14. Based on the foregoing, minimal diversity is established because, at all relevant times, Plaintiff has been a citizen of California, and none of the Defendants is a citizen of California.

**B. <u>CAFA's Class Size Requirement Is Satisfied</u>**

15. Plaintiff's Complaint seeks to represent a "California Class" (along with numerous sub-classes) consisting of all current and former non-exempt employees in California since four years prior to the filing of the Complaint, *i.e.*, since January 27, 2018. (Compl. ¶ 38(A-I).)

16. Plaintiff concedes "each class has over 100 members." (Compl. ¶ 40(a).)

17. Thus, CAFA's size requirement is satisfied, and this is a putative class action pursuant to 28 U.S.C. § 1332(d).

**C. <u>CAFA's Requisite Amount in Controversy Is Satisfied</u>**

18. Plaintiff has not alleged a specific amount in controversy in the Complaint. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to

establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is more likely than not that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

19. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" by adding "the potential claims of the absent class members." *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

20. While Defendants deny the validity of Plaintiff's claims and requests for relief and does not conceded in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

21. As described further below, the amount in controversy exceeds the jurisdictional minimum of $5,000,000. Notably, even if the Court limits its review to just the meal period and rest break claims and restricts itself to extremely

conservative assumptions, Plaintiff has still placed more than $5,000,000 in controversy.

**1. <u>Claims Considered</u>**

22. In determining the amount in controversy to support its Notice of Removal, Defendants rely here on a conservative estimate of the amount in controversy based only on damages sought by Plaintiff as a result of the alleged: (1) failure to provide meal periods; and (2) failure to authorize and permit rest periods.

23. Because the amounts in controversy for these <u>two claims alone</u> satisfy the jurisdictional minimum requirement of $5 million, Defendants do not include additional analyses for estimates of the amounts placed in controversy by Plaintiff's six other causes of action as alleged in the Complaint, including potential damages sought for the allegations of: (1) failure to pay overtime wages; (2) failure to pay double time wages; (3) failure to include all remuneration when calculating overtime rate of pay; (4) failure to provide accurate wage statements; (5) failure to timely pay final wages; and (6) unfair competition. That said, Defendants reserve the right to do so in opposition to any remand motion.

**2. <u>Relevant Data</u>**

24. As set forth in the concurrently filed Kendall Declaration, Defendant Concentra's hourly non-exempt employees in California have worked at least 834,092 shifts lasting 3 ½ hours or longer since January 27, 2018. (Kendall Decl., ¶ 6.)

25. Since January 27, 2018, Concentra's hourly non-exempt employees in California worked at least 775,958 shifts that were over 5 hours. (Kendall Decl., ¶ 7.)

26. Since January 27, 2018, Concentra's hourly non-exempt employees in California have been paid an average hourly rate of at least $18.00. (Kendall Decl., ¶ 8.)

**3. Meal Period Penalties**

27. Plaintiff alleges "Defendants maintained a policy, practice, and/or procedure . . . that failed to provide for a first and/or a second meal period when non-exempt, hourly employees worked between 5 and 10 or more hours in a day, throughout the class period." (Compl. ¶ 67.) Plaintiff further seeks to represent a proposed "Meal Period Class" consisting of all person "who worked at least 5 hours in a workday and did not receive wages to compensate them for missed first and/or missed second meal period." (*Id.* at ¶ 38(D).)

28. Under California law, employees who are not provided meal periods are entitled to one hour of premium pay for each day that a meal period is not provided. *See Marlo v. United Parcel Serv., Inc.*, No. CV 03-04336 DDP, 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009). Meal period claims are properly considered in determining the amount in controversy. *See, e.g., Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, No. C 08-01184 SI, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

29. When determining the amount placed in controversy by a plaintiff's allegations regarding "widespread" and "systematic" meal period violations like those alleged by Plaintiff in the Complaint, a 20% violation rate that is uniformly applied across all members of the putative class period is both reason-able and conservative. *Danielsson v. Blood Centers of Pac.*, No. 19-CV-04592-JCS, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019); *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (finding that a 20% violation rate for meal and rest period was reasonable where the plaintiff alleged a "pattern or practice" of violations); *Mendoza v. Savage Servs. Corp.*, No. 2:19-CV-00122-RGK-MAA, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (finding that a 20% violation rate for meal and rest breaks was reasonable where the complaint alleged a "pattern and practice" of violations, and noting that courts in the Central District of California "routinely apply a 20%

violation rate . . . for meal and rest period premiums" and citing cases).

30. Based on a review of Defendants' business records, the putative class members worked at least 775,958 shifts lasting five hours or longer since January 27, 2018. (Kendall Decl., ¶ 7.) The hourly rate of the putative class members was at least $18.00 per hour during this period. (Kendall Decl., ¶ 8.)

31. Defendant conservatively estimates that the amount placed into controversy by Plaintiff's claim for failure to provide legally compliant meal periods is at least $2,793,448 (155,191 x $18.00). The computation of the amount in controversy is based on conservative estimate that there was a meal break violation during 20% of the 775,958 meal-break eligible shifts (155,191 shifts), and that the putative class members earned a regular rate of at least $18.00 per hour during the relevant period.

32. **Consequently, the amount placed in controversy by the meal period claim is at least $2,793,438.**

**4. <u>Rest Period Penalties</u>**

33. Plaintiff alleges that "Defendants employed a policy and procedure which failed to provide Plaintiff and members of the Rest Break Class with timely and legally compliant first, second, and/or third rest breaks". (Compl. ¶ 74.)

34. Under California law, employers must provide at least one 10-minute rest period for shifts 3.5 hours or greater. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1029 (2012). Employees who are not provided the opportunity to take a rest period are entitled to one hour of premium pay for each day that the opportunity to take a rest period is not provided. *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011). Rest period claims are properly considered in determining the amount in controversy. S*ee, e.g., Olson v. Becton, Dickinson & Co*., 19-cv-865-MMA, 2019 WL 4673329, *4-5 (S.D. Cal. Sept. 25, 2019); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 926-27 (9th Cir. 2019).

35. As with meal period violations, an estimated 20% violation rate is both reasonable and conservative where, as here, the Plaintiff contends that "Defendants' policies and procedures were to not provide employees with legally compl[ia]nt rest breaks and to not pay employees one hour of pay at the employees' regular rate of pay for each workday that a rest break was not provided." Compl. ¶ 75; *Danielsson*, 2019 WL 7290476, at *6; *Chavez*, 2019 WL 1501576, at *3; *Mendoza*, 2019 WL 1260629, at *2.

36. Based on a review of Defendants' business records, the putative class members worked at least 834,092 shifts at or exceeding 3.5 hours in length during the relevant period. (Kendall Decl., ¶ 6.)

37. Defendant conservatively estimates that the amount placed into controversy by Plaintiff's claim for failure to provide legally compliant rest periods is at least $3,002,724 (166,818 x $18.00). The computation of the amount in controversy is based on conservative estimate that there was a rest break violation for 20% of the 834,092 shifts that were eligible for at least one rest break (166,818), and that the putative class members earned a regular rate of $18.00 per hour during the relevant period. (Kendall Decl., ¶ 8.)

38. **Consequently, the amount placed in controversy by the rest break claim is at least $3,002,724.**

### 5. <u>Summary of Amount in Controversy</u>

39. As detailed above, the amount in controversy just for Plaintiff's claims for meal period and rest break penalties is at least **$5,796,162** (or **$2,793,438 + $3,002,724**), thus exceeding the jurisdictional minimum under 28 U.S.C. § 1332(d).

40. The Complaint satisfies the requisite amount of controversy for removal under CAFA *without* taking into account the attorneys' fees sought by Plaintiff, alleged pre-judgment interest to date, and additional claims for: (1) failure to pay overtime wages; (2) failure to pay double time wages; (3) failure to include all remuneration when calculating overtime rate of pay; (4) failure to provide accurate

wage statements; (5) failure to timely pay final wages; and (6) unfair competition. Consequently, even if the Court applies a conservative and limited review of Plaintiff's Complaint, it is clear that the amount in controversy requirement is met.

## IV. VENUE IS PROPER

41. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending. The Superior Court of the State of California for the County of Los Angeles is located within the Central District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## V. SATISFACTION OF REQUIREMENTS OF 28 U.S.C. § 1446

42. As discussed above, Plaintiff served Defendants with a copy of the Complaint, which is attached to the Notice of Removal as Exhibit A. Additional documents served on Defendants' agent of service in connection with the Action include the Summons, Civil Case Cover Sheet; Civil Case Cover Sheet Addendum; Notice Of Case Assignment; Initial Status Conference Order (Complex Litigation Program); Minute Order; Certificate of Mailing; Voluntary Efficient Litigation Stipulations Packet; Order Pursuant to CCP 1054(a), Extending Time to Respond by 30 Days When Parties Agree to Early Organizational Meeting Stipulation; First Amended General Order, ADR Packet Information, and a Notice of Complex Determination Hearing and Case Management Conference. A true and correct copy of these documents is attached as Exhibit C to the Notice of Removal. (*See also* Chemers Decl., ¶ 4.)

43. In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Los Angeles. Notice of compliance shall be filed promptly afterward with this Court.

44. As required by Federal Rule of Civil Procedure 7.1, Defendants concurrently filed their Certificate of Interested Parties and Disclosure Statement.

45. Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendants request that the Court issue an Order to Show Cause so that Defendants may have an opportunity to more fully brief the basis for this removal

WHEREFORE, Defendants remove the above-captioned action to the United States District Court for the Central District of California.

DATED: May 31, 2022

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: /s/ Alexander M. Chemers
Charles L. Thompson, IV
Alexander M. Chemers
Jared L. Palmer

Attorneys for Defendants
SELECT EMPLOYMENT SERVICES, INC., CONCENTRA HEALTH SERVICES, INC., and SELECT MEDICAL CORPORATION

51660982.v1-OGLETREE